UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESHUN BOWERS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DR. OLUFEMI OWOLABI, et al.,<br><br>　　　　Defendants. | No.  1:23-cv-00687-SAB (PC)<br><br>ORDER DISMISSING ACTION FOR FAILURE TO STATE A COGNIZABLE CLAIM FOR RELIEF<br><br>(ECF No. 15) |

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.  All parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C § 636(c).  (ECF No. 12.)

Currently before the Court is Plaintiff's first amended complaint, filed July 14, 2023.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

1

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## SUMMARY OF ALLEGATIONS

The Court accepts Plaintiff's allegations in his complaint as true *only* for the purpose of the screening requirement under 28 U.S.C. § 1915.

Plaintiff names Dr. Olufemi Owolabi and nurse practitioner Premila Thomas, as Defendants.

On or about July 3, 2021, Plaintiff went to his building officer to get permission to go to Facility D medical clinic to seek treatment for an abscess on the right inside part of Plaintiff's writ, which at the time was approximately the size of a prune. Once Plaintiff's building officer saw the abscess he permitted Plaintiff to go to the clinic. Upon arrival, officer Dunn said, "are you the one with the ab[s]cess?" Plaintiff stated, "Yeah," then showed Dunn the abscess who instructed Plaintiff to have a seat while he went to the Treatment and Triage Area (TTA) nurse.

When the TTA nurse arrived she began to conduct a physical assessment of Plaintiff's abscess by looking at it through a magnifying glass. She told Plaintiff she saw two puncture wounds side by side and if it from a spider bite or drug use. Plaintiff felt disrespected by the latter statement and angrily snapped back stating, "I don't know what its from. All I know is my arm was hurting yesterday and when I woke up this morning this lump was there." The TTA nurse then replied, "Well, you're going to need an incision and drainage procedure. I know how to do the procedure however nurses are no longer permitted to do them. Only doctor's can do them now; and unfortunately for you, you came in on a fourth of July weekend when there [is] no doctor's here. But let me take your vitals and then I'll call the on-call doctor."

Plaintiff heard the TTA nurse addressing the on-call doctor, Dr. Nege. Approximately 30 minutes later, Plaintiff heard officer Dunn exclaim loudly, "He (Dr. Nege) gave him (Plaintiff), Vicodin!" Approximately 5 minutes later, the TTA nurse gave Plaintiff a bottle of Ibuprofen and said Dr. Nege ordered medication to be picked up at the "pill call" window. Dr. Nege also ordered an incision and drainage procedure for July 6, 2021.

On or about July 3, 2021, at approximately 8:00 p.m. at the pill-call distribution window Plaintiff was administered an antibiotic, but he did not receive pain medication. Plaintiff asked why he was not provided Vicodin and the nurse said she didn't know why the prescribed medication was not there.

On or about July 4, 2021, Plaintiff had been able to remain asleep and would wake up due to the pain he was experiencing and the Ibuprofen did not provide any relief. Therefore, at approximately 6:00 p.m., Plaintiff returned to the medical clinic. At approximately 6:05 p.m., Plaintiff was seen by a nurse and explained the abscess had doubled in size and expressed his desire for pain medication. The nurse checked Plaintiff's medical chart which noted that Plaintiff had received Ibuprofen and advised Plaintiff that nothing stronger could be provided. Plaintiff explained that he did not understand why Dr. Nege "would not order a pain medication knowing that this infection would be festering for (3) days before I can receive medical treatment." The nurse responded that "per nurses protocols [they] cannot administer an opioid without a doctor being present" to which Plaintiff said "who said anything about an opioid. How do you know that

Dr. Nege ordered me Vicodin?"

As Plaintiff got up to return to his housing unit, he told the nurse "I don't know what that TTA nurse did … but somehow she changed my order. I'm going to write ya'll up." Upon Plaintiff's return to his housing unit, he reviewed the nurses protocol and discovered that they are restricted from administering any opioid medication outside of a doctor's present.

On or about July 4, 2021, at approximately 10:30 p.m., Plaintiff began to develop numerous tiny pinholes which was the infection eating away his abscess. Plaintiff had a building officer escort him back to the medical clinic and the TTA nurse stated, "I've already looked in your chart and you have an order for an I&D procedure for the 6th and per the nurses protocol I cannot give you an opioid!" The TT nurse then approached Plaintiff with paper towels and laid them over his abscess and squeezed extremely hard which made him scream. The nurse stated that "it's not ripe yet!"

On the night of July 4, 2021, and morning of July 5, 2021, Plaintiff was not able to sleep through the night due to the severity of pain.

On or about July 5, 2021, at approximately 7:00 a.m., Plaintiff was preparing to brush his teeth and noticed the abscess was now the size of a golf ball and his wrist was swollen. However, Plaintiff was discouraged from going to the medical clinic and waited until the next day for his scheduled procedure.

On or about July 6, 2021, at approximately 10:00 a.m., Plaintiff had not been summoned to the medical clinic so he advised the housing unit officer and explained the situation. The officer called the medical clinic who said they would call him back. At approximately 12:00 p.m., Plaintiff still had not been called to the clinic for medical treatment and officer Fuentes told Plaintiff to go to the clinic.

When Plaintiff arrived at the clinic, officer Rodriguez retrieved nurse practitioner Thomas who observed the abscess and went to get Dr. Owolabi from his office. Dr. Owolabi observed the abscess and said, "Aw, this is from drugs. I don't have time for this." Dr. Owolabi relied on Dr. Nege's statement that the abscess was from drugs. Dr. Owolabi then asked nurse Thomas, "can you do it" to which she responded, "yes I know how to do it." Nurse Thomas gathered about 4

other nurses and said, "I want you guys to come and see this (i.e. the I&D procedure)." Plaintiff signed a blank consent form. Once nurse Thomas prepared Plaintiff's arm, she picked up the scalpel to cut open the abscess and Plaintiff immediately stopped and said, "you've got to give me anesthetic." Thomas then aid, "you don't need it," to which Plaintiff said "I do need it. the infection feels like it's in my bones." Nurse Thomas then replied, "I'm not giving you anything. You see that's why you shouldn't use drugs it isn't worth it." Nurse Thomas asked Plaintiff if he wished to proceed with the procedure and he said, "what choice do I have the infection is spreading into my hand."

Nurse Thomas began to slice open the abscess and cut of pieces of flesh to create a hole from which to drain it. The pain was so intense that it caused Plaintiff to briefly lose consciousness. The TTA nurse made light of Plaintiff's situation by repeatedly saying, "don't you pass out, you better not pass out. If you pass I'm going to let the guys on the yard know that you passed out." At the end of the procedure, nurse Thomas told Plaintiff to "lay there for a little while, I don't want you to go back to your building and pass-out on the way." Had Plaintiff been properly informed that nurse Thomas was not the physician and surgeon he would not have signed the consent form.

On or about August 1, 2021, Plaintiff submitted a healthcare grievance.

On or about August 18, 2021, Plaintiff received his medical records covering the month of July. However, Plaintiff noticed that on or about August 5, 2021, nurse Thomas accessed Plaintiff's medical file and added false statements and delated a large number of statements, notations and comments.

## III.

## DISCUSSION

### A. Deliberate Indifference to Serious Medical Need

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's

1   health or safety. See Farmer v. Brennan, 511 U.S. 825, 834 (1994).

2         A "serious" medical need exists if the failure to treat a prisoner's condition could result in
3   further significant injury or the "unnecessary and wanton infliction of pain." Id. The following are
4   examples of indications that a prisoner has a "serious" need for medical treatment: the existence
5   of an injury that a reasonable doctor or patient would find important and worthy of comment or
6   treatment; the presence of a medical condition that significantly affects an individual's daily
7   activities; or the existence of chronic and substantial pain. McGuckin v. Smith, 974 F.2d 1050,
8   1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104
9   F.3d 1133, 1136 (9th Cir. 1997) (en banc).

10        A prison official is deliberately indifferent if he knows that a prisoner faces a substantial
11  risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. See
12  Farmer, 511 U.S. at 837. The official must both know of "facts from which the inference could be
13  drawn" that an excessive risk of harm exists, and he must actually draw that inference. Id.  If a
14  prison official should have been aware of the risk, but was not, then the official has not violated
15  the Eighth Amendment, no matter how severe the risk. Gibson v. County of Washoe, 290 F.3d
16  1175, 1188 (9th Cir. 2002).

17        "A difference of opinion between a prisoner-patient and prison medical authorities
18  regarding treatment does not give rise to a § 1983 claim." Franklin v. Oregon, 662 F.2d 1337,
19  1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion
20  as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to
21  establish deliberate indifference, see Toguchi v. Chung, 391 F.3d 1051, 1058-60 (9th Cir. 2004);
22  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Mayfield v. Craven, 433 F.2d 873, 874 (9th
23  Cir. 1970). In order to prevail on a claim involving choices between alternative courses of
24  treatment, a plaintiff must show that the course of treatment the doctors chose was medically
25  unacceptable under the circumstances and that he or she chose this course in conscious disregard
26  of an excessive risk to plaintiff's health. Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d
27  330, 332 (9th Cir. 1996) (citing Farmer, 511 U.S. at 837).

28  ///

Plaintiff claims that Dr. Owolabi was deliberately indifference because he failed to perform the removal of Plaintiff's abscess and that nurse practitioner was deliberately indifferent for failing to provide anesthesia for the procedure she conducted on July 6, 2021. Plaintiff's factual allegations fail to give rise to a claim for relief.

With respect to Dr. Owolabi, it is clear from Plaintiff's allegations that he examined Plaintiff on July 6, 2021, and asked nurse practitioner Thomas if she could perform the procedure to which she said "yes." Although Plaintiff contends that Dr. Owolabi had "no knowledge" whether nurse practitioner possessed the skill and ability to perform the procedure, there are no factual allegations to support such contention and the facts demonstrate otherwise.

With regard to nurse practitioner Thomas, Plaintiff contends that she was deliberately indifferent for failing to provide anesthesia for the removal of his abscess. However, the question is not whether Plaintiff should have been provided anesthesia for the procedure, but rather whether he was provided proper treatment for removal of his abscess. As recognized by one judge in this Court,

> Plaintiff's "serious medical need" was not for anesthesia, but rather for tooth repair. Plaintiff's disagreement with the course of treatment—the decision to drill without anesthesia rather than further delay treatment given the minor nature of the repair and relatively brief period of pain—does not state a constitutional claim. Had [the dentist] gratuitously drilled plaintiff's teeth for no good medical reason, then the evidence would clearly support a finding of willful and wanton infliction of pain and plaintiff would have supported a direct claim for cruel and unusual punishment contrary to the Eighth Amendment. However, where pain was an incidental part of a dentist's chosen course of treatment, the question is not whether [the dentist] was indifferent to the incidental pain, but rather whether he was indifferent to the plaintiff's existing dental condition. Plaintiff conceivably may have some other claim against [the dentist]—for battery, perhaps, for malpractice, perhaps—but he does not have a constitutional claim arising out of his treatment ....

Alford v. Gyaami, No. 2:13-cv-2143 DAD P, 2015 WL 3488301, at *9 (E.D. Cal. June 2, 2015) (citing Bout v. Bolden, 22 F.Supp.2d 646, 651 (E.D. Mich. 1998)). Thus, Plaintiff's "serious medical need" in this case is the treatment for the removal of his abscess. Accordingly, the mere fact that Plaintiff experienced pain as an incidental part of that treatment does not give rise to a constitutional violation. Alford v. Gyaami, 2015 WL 3488301, at *9; Bout v. Bolden, 22

1  F.Supp.2d at 651; Snipes v. DeTelle, 95 F.3d 586, 591-92 (7th Cir. 1996) (holding that removal
2  of a toenail without the use of anesthetic should be viewed as a course of treatment, and that even
3  if the desire for anesthetic were a separable medical need, denial of that need was not objectively
4  sufficiently serious to constitute the denial of the minimal civilized measure of life's necessities,
5  regardless of the doctor's motives, because it is not the type of barbaric treatment the Eighth
6  Amendment prohibits); Buchanan v. United States, No. 05–CV–0887, 2007 WL 983312, at *4
7  (M.D. Pa. Mar. 27, 2007) (dismissing as not cognizable inmate's claim "that the deliberate
8  decision not to administer anesthesia or pain killing medicine [before cleaning and suturing a
9  laceration] subjected him to unnecessary pain in violation of the Eighth Amendment's prohibition
10  against cruel and unusual punishment").

11  Furthermore, Defendant nurse Thomas merely complied with the Dr. Owolabi's order
12  when performing the abscess removal procedure. See Gould v. California Dep't of Corr. &
13  Rehab., No. 2:18-CV-1981-JAM-EFB (P), 2020 WL 704000, at *3 (E.D. Cal. Feb. 12, 2020)
14  (concluding that it is not possible for a nurse to have a culpable state of mind constituting
15  deliberate indifference when all she did was follow doctor's orders). Moreover, there are
16  insufficient allegations to demonstrate that Dr. Owolabi order so obviously incorrect that nurse
17  Thomas exhibited deliberate indifference merely by complying with it. Indeed, based on
18  Plaintiff's allegations both Drs. Owolabi and Nege believed the abscess was from drug use which
19  supports a reasonable inference that the determination to not provide stronger pain medication
20  was medically appropriate under the circumstances.

21  Plaintiff's additional claim that nurse Thomas subsequently falsified his medical records
22  does not give rise to a claim for relief. There is no cognizable Eighth Amendment claim for the
23  falsification of medical records in and of itself. See Crisp v. Wasco State Prison, No. 13-01899,
24  2015 WL 3486950, at *5 (E.D. Cal. June 2, 2015) ("While falsification or alteration of medical
25  records may supply facts relevant to an Eighth Amendment claim of deliberate indifference to
26  serious medical needs, Plaintiff has no independent claim for relief under the Eighth Amendment
27  for 'denial of accurate medical records.' "); Bartholomew v. Traquina, No. 10-3145, 2011 WL
28  4085479, at *3 (E.D. Cal. Sept. 13, 2011) ("The falsification of records itself is insufficient to

1  state a cognizable claim of deliberate indifference to plaintiff's serious medical needs.").

2  Plaintiff's claim that he should have received prescription pain medication is the type of
3  difference in medical opinion between a lay prisoner and medical personnel that is insufficient to
4  establish a constitutional violation. Plaintiff is not entitled to his choice of pain medication. See
5  Estelle, 429 U.S. at 107 (a physician's decision concerning how to treat a patient's pain "is a
6  classic example of a matter for medical judgment."); see also Alford v. Gyaami, No. 2:13-CV-
7  2143 DAD P, 2015 WL 3488301, at *10 n.3 (E.D. Cal. June 2, 2015) (noting that "in other
8  contexts, courts within this circuit have consistently rejected a prisoner's attempt to dictate the
9  terms of their pain medication") (citing cases).  Accordingly, Plaintiff fails to state a cognizable
10 claim for relief.

**B.     State Law Claims**

Plaintiff seeks to bring state law claims for negligence, battery, and intentional infliction of emotional distress.

In order to proceed with a state law claim, Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other state laws are not sufficient to state a claim for relief under § 1983.  Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367.  Here, the Court has found no federal claim.

**C.     Further Leave to Amend**

If the court finds that a complaint or claim should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. Leave to amend should be granted if it appears possible that the defects in the complaint could be corrected, especially if a plaintiff is pro se. Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (citation omitted). However, if, after careful consideration, it is clear that a claim cannot be cured by amendment, the Court may dismiss without leave to amend. Cato, 70 F.3d at 1105-06.

9

It appears to the Court that further amendment would be futile because Plaintiff's factual allegations do not rise to the level of an Eighth Amendment violation even after granting leave to amend. The Court screened Plaintiff's original complaint, found no cognizable claim, advised Plaintiff of the applicable legal standards and instructed Plaintiff to cure the deficiencies in his amended complaint, if he could do so. Because Plaintiff has again failed to state a cognizable claim under the Eighth Amendment for deliberate indifference, the Court finds further leave would be futile. See Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that while leave to amend shall be freely given, the court does not have to allow futile amendments).

## IV.

## CONCLUSION AND ORDER

For the reasons discussed, Plaintiff fails to state a cognizable claim for relief and further leave to amend would be futile.

Accordingly, it is HEREBY ORDERED that:

1. The instant action is dismissed for failure to state a cognizable claim for relief; and
2. The Clerk of Court shall terminate this action.

IT IS SO ORDERED.

Dated:   **August 22, 2023**                                    _____
                                                                 UNITED STATES MAGISTRATE JUDGE

10